# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHNATHAN SEXTON,                                    Case No. 1:14-cv-26
     Plaintiff,

                                           Dlott, J.
    vs                                           Bowman, M.J.


JIM NEIL, et al.,                                    **ORDER AND REPORT**
     Defendants.                                   **AND RECOMMENDATION**


Plaintiff, a prisoner at the Marion Correctional Institution in Marion, Ohio, brings this *pro se* civil rights action under 42 U.S.C. § 1983 challenging his treatment when he was incarcerated at the Hamilton County Justice Center (HCJC) in Cincinnati, Ohio.  By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see*

*also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-

2

pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff brings this § 1983 action against Hamilton County Sheriff Jim Neil and two HCJC correctional officers, Cory Jones and David Smucker. (Doc. 1, Complaint, p. 4). Plaintiff claims that on February 9, 2013, when he was housed in HCJC's "protective custody pod," he was "brutally attacked and stabbed by three inmates" when defendants Jones and Smucker were on duty with Jones "working control while Smucker made rounds and served chow." (*Id.*, pp. 5, 6). Plaintiff alleges that the attack began shortly after 9:30 p.m., when inmate Dubose came into his cell and attacked him "without provocation." (*Id.*, p. 5). The fight lasted "several minutes" until plaintiff gained "the upper hand" and threw Dubose out of the cell. (*Id.*). Plaintiff avers that he "pressed the intercom to call for the guard" and, when he received "no reply," left his cell to use the intercom in the pod. (*Id.*). When looking into the guard booth from the top of the range, he "noticed the blue glow of a smart phone." (*Id.*). At that point, however, inmates Carter and Hopper "came charging up the stairs and tackled" plaintiff. (*Id.*). The two inmates dragged plaintiff into an alcove, where he "was stomped on, punched and then stabbed by Hopper with a Bic pen." (*Id.*). The attack ended "only when the

3

guard called for 'lock-down'" around 9:45 p.m.  (*Id.*).  Plaintiff alleges that when he got back

to his cell, he "again hit the intercom."  (*Id.*).  Defendant Jones answered the call, but after

being informed that plaintiff "had just been jumped" and was in need of help, Jones replied that

"he could not leave his post . . . as he was the only officer in the booth."  (*Id.*).  Plaintiff alleges

that "[h]elp finally got there after 9:50 p.m" when "[m]edical responded and 911 was called."

(*Id.*).  Plaintiff was taken to University Hospital, where it was determined that he had suffered

a broken nose, two stab wounds in the back of the head, a concussion and multiple bruises.

(*Id.*).  Plaintiff alleges that upon his return to HCJC several hours later, he "was admitted to

medical and stayed there for several days."  (*Id.*).  Plaintiff claims that he suffered from and

was treated for "dizzy spells for about a month thereafter."  (*Id.*).

Plaintiff further alleges that he received a "disciplinary write-up" for his involvement in

the February 9, 2013 incident.  (*Id.*, p. 6).  He was "given 20 days of cell isolation which

consists of 23 hour lock-down and food loafs instead of a regular tray."  (*Id.*).  Plaintiff states

that he "was only defending" himself and that although he appealed the disciplinary action

taken against him, his "request was overruled."  (*Id.*).

In the complaint, plaintiff essentially claims that the level of protection from inmate

assaults provided by the defendants amounted to a violation of his Eighth Amendment right to

be free from cruel and unusual punishment.  He contends in pertinent part as follows:

> I filed a grievance as a result of the violence that occurred that night.  There was
> no reason for such activity to go unnoticed for such an[] extended period of time.
> Two officers (Jones & Smucker) were assigned to south 42 that night. . . .  Officer
> Smucker was not at his post when this violence was occurring.  I saw Officer
> Jones playing on his phone.  From the guards booth, one can get a complete view
> of all four pods as well as all of the cells.  All the officer has to do is look out the
> window from the booth to observe what is occurring. . . .  Consider also that this
> floor has a protective custody unit.  The very nature of P.C. implies extra security
> and measures be taken for the safety of any such inmate.  On this given night, all
> one had to do was observe what was happening in the pod. . . .

> In conclusion, I want to bring attention to the conditions and overcrowding that are plaguing this jail. . . .  Whether due to staff negligence or shortages, the level and severity of violence that was able to persist that night was unacceptable.  I was left to languish in my cell for some 10 minutes until help arrived.  I was then punished for defending myself when I had no other recourse.

(*Id.*).  As relief, plaintiff requests an award of $60,000 in compensatory damages and $60,000 in punitive damages from each defendant.  (*Id.*, p. 7).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff's claims against defendants Jones and Smucker for their alleged failure to protect plaintiff from the inmate assault that occurred on February 9, 2013 are deserving of further development and may proceed at this juncture.  *See* 28 U.S.C. § 1915(e)(2)(B).  Moreover, plaintiff's claim against defendant Neil may proceed at this juncture to the extent that plaintiff alleges that in the face of "overcrowding" at the jail, the low level of security provided at HCJC to protect against inmate assaults played a role in the February 9, 2013 incident.  However, it is **RECOMMENDED** that the following portions of the complaint should be dismissed at the screening stage because it is clear from the face of the pleading that plaintiff has failed to state a claim upon which relief may be granted:

(1) To the extent plaintiff alleges that defendant Neil should be held liable for Jones' and Smucker's alleged misconduct during the February 9, 2013 incident, such an allegation should be dismissed for failure to state a viable federal claim under § 1983 in the absence of any allegations in the complaint suggesting that Neil was involved in, encouraged, or was even aware of the two correctional officers' actions on the night in question.  To the extent that plaintiff alleges Neil is liable in his supervisory capacity for the misconduct of his employees, plaintiff has not stated an actionable claim for relief under § 1983.  It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto

supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455

(6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order

to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow

personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced

in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697

F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see*

*also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564

F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials,

the plaintiff must show the officials "at least implicitly authorized, approved or knowingly

acquiesced in the unconstitutional conduct of the offending officers"). In the instant case,

plaintiff has made no such allegation against the Hamilton County Sheriff. *Cf. Wingo,* 499 F.

App'x at 455 (involving analogous claim against state correctional supervisory officials); *see*

*also Koch v. Cnty. of Franklin*, No. 2:08cv1127, 2010 WL 23686352, at *10-11 (S.D. Ohio

June 10, 2010) (Frost, J.) ("a supervisory official's failure to supervise, control or train the

offending individual is not actionable unless the supervisor either encouraged the specific

incident of misconduct or in some other way directly participated in it") (internal citations and

quotations omitted).

(2) Plaintiff has failed to state a viable claim under § 1983 to the extent that he challenges

the disciplinary action that was taken against him at HCJC for his involvement in the February 9,

2013 incident, which resulted in his 20-day placement in "cell isolation" where he was kept in

"23 hour lock-down" and provided with "food loafs instead of a regular tray." (*See* Doc. 1,

Complaint, p. 6). Plaintiff's allegations are insufficient to trigger constitutional concerns

because the challenged disciplinary action did not amount to a deprivation of a constitutionally

protected liberty interest.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held

that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom

from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence."

*Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998);

*Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002).  The Sixth Circuit has held that

confinement in segregation generally does not rise to the level of an "atypical and significant"

hardship implicating a liberty interest except in "extreme circumstances, such as when the

prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that

such confinement was excessively long in duration.  *Joseph v. Curtin*, 410 F. App'x 865, 868

(6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in

original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir.) (holding that the prisoner's

8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest

that triggered his right to due process"), *cert. denied*, 133 S.Ct. 429 (2012).  *Cf. Wilkinson v.

Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax"

prison "imposes an atypical and significant hardship" given the combination of extreme isolation

of inmates, prohibition of almost all human contact, indefinite duration of assignment, and

disqualification for parole consideration of otherwise eligible inmates).

　　　Here, plaintiff has not alleged that the challenged disciplinary proceeding resulted in the

lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any

necessities of life.  Plaintiff's 20-day confinement in "cell isolation" where he was kept in 23-

hour "lock-down" was not so lengthy in duration as to rise to the level of an atypical and

significant hardship and thus does not trigger due process concerns.  *Cf. Jones*, 155 F.3d at 812

(holding that an inmate's administrative segregation for two and a half years while his participation in a prison riot was being investigated did not amount to an atypical and significant hardship); *Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117-day delay in releasing the plaintiff from administrative segregation to the general prison population did not impose an atypical or significant hardship on the plaintiff and thus did not trigger due process concerns); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (30 days in Security Control, 14 days in Disciplinary Control and six to eight months in Administrative Control did not constitute an "atypical hardship" under *Sandin*).

Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim challenging the disciplinary action taken against him at the HCJC based on the February 9, 2013 incident fails to state a cognizable federal claim.[1]

---

[1] It is noted that although plaintiff does not appear to challenge the handling of the grievance he filed as a result of the February 9, 2013 inmate assault incident, any such challenge would also fail to state a cognizable claim for relief under 28 U.S.C. § 1983. Such a claim does not implicate federal constitutional concerns because plaintiff has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000)).

(3) Plaintiff has failed to state a viable claim under § 1983 against the defendants to the extent he suggests in the complaint that they should be held liable for their "negligence." (*See* Doc. 1, Complaint, p. 6). Negligence does not implicate any Eighth Amendment concerns. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)). The defendants may be held liable only if shown that their alleged failure to protect plaintiff from inmate assaults amounted to deliberate indifference or, in other words, knowledge and disregard of an excessive risk to inmate health or safety. *See id.* at 834-38; *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (and cases cited therein). Therefore, any claim against the defendants based on the theory of negligence does not state a cognizable federal claim.

Accordingly, in sum, it is **RECOMMENDED** that the following claims be dismissed for failure to state a federal claim for relief under § 1983: (1) any claim that defendant Neil is liable in his supervisory capacity for Jones' and Smucker's alleged misconduct during the February 9, 2013 incident; (2) any claim challenging the disciplinary action that was taken against plaintiff at HCJC for his involvement in the February 9, 2013 incident; and (3) plaintiff's claims against the defendants based on the theory of negligence.

**IT IS THEREFORE RECOMMENDED THAT:**

The complaint be **DISMISSED** for failure to state a claim upon which relief may be granted to the extent that plaintiff (1) alleges defendant Neil is liable in his supervisory capacity for Jones' and Smucker's alleged misconduct during the February 9, 2013 incident; (2) challenges the disciplinary action that was taken against him at HCJC for his involvement in the February 9, 2013 incident; and (3) claims that the defendants are liable under § 1983 for

their "negligence" in failing to protect him from inmate assault.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting prisoner *in forma pauperis* status, and this Order and Report and Recommendation upon the defendants as directed by plaintiff.  All costs of service shall be advanced by the United States.

2.  Plaintiff shall serve upon the defendants or, if appearance has been entered by counsel, upon the defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or their counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the clerk or which fails to include a certificate of service will be disregarded by the Court.

3.  Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.


s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHNATHAN SEXTON,                          Case No. 1:14-cv-26
     Plaintiff,

                               Dlott, J.
     vs                                    Bowman, M.J.

JIM NEIL, et al.,
     Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after

being served with a copy thereof.  That period may be extended further by the Court on timely

motion by either side for an extension of time.  All objections shall specify the portion(s) of the

R&R objected to, and shall be accompanied by a memorandum of law in support of the

objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after

being served with a copy of those objections.  Failure to make objections in accordance with this

procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States*

*v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

11