UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONATHAN SEXTON,                  Case No. 1:14-cv-26

       Plaintiff,                                Dlott, J.
                                                    Bowman, M.J.
  v.

INSTITUTIONAL INSPECTOR MAHALMA, et al.,

       Defendants.

**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff, presently a prisoner at the Marion Correctional Institution, filed this §1983 action concerning an incident that occurred while he was a pretrial detainee incarcerated at the Hamilton County Justice Center ("HCJC"). On January 9, 2014, Plaintiff filed suit against Hamilton County Sheriff Jim Neil and two HCJC correctional officers, Cory Jones and David Smucker. (Doc. 1, Complaint, p. 4).

Plaintiff claims that on February 9, 2013, while housed in HCJC's "protective custody pod," he was "brutally attacked and stabbed by three inmates" when defendants Jones and Smucker were on duty with Jones "working control while Smucker made rounds and served chow." (*Id.*, pp. 5, 6). Plaintiff alleges that the attack began shortly after 9:30 p.m., when inmate Dubose came into his cell and attacked him "without provocation." (*Id.*, p. 5). The fight lasted "several minutes" until Plaintiff gained "the upper hand" and threw Dubose out of the cell. (*Id.*). As Dubose ran downstairs, Plaintiff avers that he "pressed the intercom to call for the guard" and, when he received

"no reply," left his cell to use the intercom in the pod. (*Id.*). When looking into the guard booth from the top of the range, he "noticed the blue glow of a smart phone." (*Id.*). At that point, however, inmates Carter and Hopper "came charging up the stairs and tackled" Plaintiff. (*Id.*). Plaintiff alleges that Carter and Hopper were bribed to attack him by inmate Dubose. The two inmates dragged Plaintiff into an alcove, where he "was stomped on, punched and then stabbed by Hopper with a Bic pen." (*Id.*). The attack ended "only when the guard called for 'lock-down'" around 9:45 p.m. (*Id.*). Plaintiff alleges that when he got back to his cell, he "again hit the intercom." (*Id.*). Defendant Jones answered the call, but after being informed that Plaintiff "had just been jumped" and was in need of help, Jones replied that "he could not leave his post . . . as he was the only officer in the booth." (*Id.*). Plaintiff alleges that "[h]elp finally got there after 9:50 p.m" when "[m]edical responded and 911 was called." (*Id.*). Plaintiff was taken to University Hospital, where it was determined that he had suffered a broken nose, two stab wounds in the back of the head, a concussion and multiple bruises. (*Id.*). Plaintiff alleges that upon his return to HCJC several hours later, he "was admitted to medical and stayed there for several days." (*Id.*). Plaintiff claims that he suffered from and was treated for "dizzy spells for about a month thereafter." (*Id.*).

Plaintiff further alleges that he received a "disciplinary write-up" for his involvement in the incident. (*Id.*, p. 6). He was "given 20 days of cell isolation," allegedly consisting of "23 hour lock-down and food loafs instead of a regular tray." (*Id.*). Plaintiff admits that he used a pencil to stab inmate Dubose, but contends that he "was only defending" himself. He alleges he appealed the disciplinary action taken against him, but his "request was overruled." (*Id.*).

On initial screening, the undersigned construed Plaintiff's complaint as "essentially" a claim that the level of protection from inmate assaults provided by Defendants amounted to a violation of his Eighth Amendment right to be free from cruel and unusual punishment.   The relevant portion of Plaintiff's complaint alleges:

> I filed a grievance as a result of the violence that occurred that night. There was no reason for such activity to go unnoticed for such an extended period of time. Two officers (Jones & Smucker) were assigned to south 42 that night. . . . Officer Smucker was not at his post when this violence was occurring. I saw Officer Jones playing on his phone. From the guards booth, one can get a complete view of all four pods as well as all of the cells. All the officer has to do is look out the window from the booth to observe what is occurring. . . . Consider also that this floor has a protective custody unit. The very nature of P.C. implies extra security and measures be taken for the safety of any such inmate. On this given night, all one had to do was observe what was happening in the pod. . . .
>
> In conclusion, I want to bring attention to the conditions and overcrowding that are plaguing this jail. . . . Whether due to staff negligence or shortages, the level and severity of violence that was able to persist that night was unacceptable. I was left to languish in my cell for some 10 minutes until help arrived. I was then punished for defending myself when I had no other recourse.

(*Id.*). As relief, Plaintiff requests an award of $60,000 in compensatory damages and $60,000 in punitive damages from each Defendant. (*Id.*, p. 7).

Under the screening standards applicable to prisoner civil rights complaints, pursuant to 28 U.S.C. §1915(e)(2)(B), the undersigned initially concluded that Plaintiff's claims against Defendants Jones and Smucker for their alleged failure to protect Plaintiff from the inmate assault that occurred on February 9, 2013 were deserving of further development.  Therefore, the Court directed summons to issue on that claim. The Court also directed Defendants to respond to Plaintiff's claim against Defendant Neil that in the face of "overcrowding" at the jail, the low level of security provided at HCJC to protect against inmate assaults played a role in the February 9, 2013 incident.

3

However, the Court dismissed several other claims without requiring Defendants to answer. The Court specifically held that the following allegations failed to state any claim: (1) Plaintiff's allegation that defendant Neil should be held liable, in a supervisory capacity, for Jones' and Smucker's alleged misconduct during the February 9, 2013 incident; (2) Plaintiff's challenge to the disciplinary action that was taken against him for his involvement in the incident; (3) any potential challenge to the procedural handling of Plaintiff's grievance; and (4) any claim for "negligence" in failing to protect Plaintiff from the alleged inmate assault. (Docs. 4, 9, 17).

All three Defendants filed their Answer to the complaint on April 2, 2014, and the Court directed the parties to proceed with discovery. (Docs. 15, 16). On July 9, 2014, Defendants Jones and Smucker filed a joint motion for judgment on the pleadings.[1] Plaintiff filed a response in opposition, to which Defendants have filed a reply. (Docs. 22, 25, 26). For the reasons that follow, Defendants' motion should be granted and the claims against Defendants Jones and Smucker should be dismissed.

**II. Analysis**

**A. Judgment on the Pleadings Standard**

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001). Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual

---

[1]Although all three Defendants are represented by the same counsel, the motion filed solely by Defendants Jones and Smuckers explains that "[i]ssues pertaining to Sexton's action against Sheriff Neil in his official capacity will be dealt with separately." (Doc. 22 at 2). No separate motion has yet been filed and the undersigned therefore has not undertaken any further review of the allegations against Defendant Neil at this time.

allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir.2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.,* 508 F.3d at 336. To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

The Sixth Circuit has explained the pleading requirements that are necessary to survive a Rule 12(c) motion as follows:

> In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 1964–65 (internal citations omitted). In *Erickson v. Pardus,* 550 U.S. ——, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly,* however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* at 2200 (quoting *Twombly,* 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly,* 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion

5

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg–Legacy Place,* 539 F.3d 545, 549–50 (6th Cir.2008) (quoting *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d at 295–96 (6th Cir.2008) (footnote omitted); *see also generally, Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B. Grounds Asserted in Defendants' Motion

Defendants' motion argues that they are entitled to judgment as a matter of law for two reasons: (1) Plaintiff's complaint fails to state any claims of deliberate indifference against them; and (2) they are entitled to qualified immunity. In his response in opposition, Plaintiff argues primarily that the undersigned should deny Defendants' motion based upon the undersigned's prior view that his claims were sufficiently alleged to proceed under 28 U.S.C. §1915(e). While the undersigned dismissed other portions of the complaint based upon a failure to state a claim, the Court nonetheless directed the three Defendants to respond to the claims of deliberate indifference, finding the allegations sufficient for "further development" at the screening stage. Plaintiff complains that "[t]he Defendants are now simply asking the court to re-screen the Pleadings which it has already screened." (Doc. 25 at 2). Plaintiff also claims that he has discovered unspecified "documents, pictures and memorandum" that would preclude judgment against him, including summary judgment.[2] (*Id.*).

The fact that the undersigned permitted Plaintiff's construed deliberate indifference claims to proceed beyond the screening stage does not preclude the

---

[2]Notwithstanding this discovery, Plaintiff recently filed a motion to extend the discovery deadline or to compel Defendants to respond to some of his outstanding written discovery requests. Plaintiff's motion will be addressed by separate order.

subsequent dismissal of the same claims upon an appropriate motion. It is true that the legal standard of review for failure to state a claim under Rule 12(c) or Rule 12(b)(6) is technically the same as the standard of review for failure to state a claim under 28 U.S.C. §§1915(e) or 1915A. *See Hill v. Lappin,* 630 F.3d 468, 470-471 (6th Cir. 2010). However, the frame of reference differs significantly. Screening under 28 U.S.C. §1915(e) is extremely liberal. The perspective of this Court, as a neutral arbiter examining the complaint on a superficial level without benefit of briefing, differs from that of an opposing party who has an incentive to thoroughly explore all possible legal arguments in a subsequent motion to dismiss or motion for judgment on the pleadings. Necessarily constrained by limitations of time and resources in the course of its initial *sua sponte* examination, this Court frequently will permit "further development" of a weak legal claim by requiring a defendant to file an answer or response.

In addition, 28 U.S.C. §1915(e)(2) expressly permits dismissal "<u>at any time</u> if the court determines that…the action or appeal…fails to state a claim on which relief may be granted." *Id.* (emphasis added). Therefore, the statute itself allows dismissal based upon a subsequent redetermination that no claim has been stated, even if the court's initial inclination was to let the claim proceed. In the case presented, Defendants' well-reasoned motion persuades the undersigned that they are entitled to dismissal based upon Plaintiff's failure to state any claim against them.

**1. Deliberate Indifference Claims**

As discussed, Plaintiff's claim against the two HCJC correctional officers, Defendants Jones and Smucker, was construed as a claim that those officers were deliberately indifferent to Plaintiff's need for protection from violence at the hands of

other prisoners. The seminal case setting forth the standards for Plaintiff's claims is *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), wherein the Supreme Court held that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" under the Eighth Amendment.[3] Thus, a prisoner can show a violation of the Eighth Amendment if he proves both an objective and subjective component of a "failure to protect" claim. First, under the objective component of the claim, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.*, 511 U.S. at 834. Second, under the subjective component, the court examines the defendant's state of mind to determine whether he acted with "deliberate indifference" equivalent to an intent to punish inmate health or safety. *Id.; see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). To establish the subjective component, a plaintiff must show that the defendants had knowledge of and disregarded an excessive risk to his safety. *Id.* at 837. In their pending motion, Defendants persuasively argue that the allegations in the complaint, even liberally construed, fall short of making out either the objective or the subjective component of a failure to protect claim.

### a. Objective Element - Substantial Risk

Plaintiff must allege that he was incarcerated under conditions presenting a substantial risk of harm. While Plaintiff generally alleges that he was being housed in a "protective custody pod" at the time of the attack, he does not allege that he alerted either Defendant Jones or Smucker to any particular threat from his attackers. In fact,

---

[3] As a pretrial detainee at HCJC, Plaintiff was entitled to the same constitutional protections. *See Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

8

he does not allege that he informed any Defendant of any specific threat to his health or safety made against him by anyone.  Rather, Plaintiff has alleged only that Jones and Smucker failed to prevent the attack against him, and/or that they were late in responding to the attack. Plaintiff alleges that Defendant Jones did not initially respond because he was busy looking at his cell phone, and alleges that Defendant Smucker did not respond because he was away from his "post."  (Doc. 1 at p.6).  However, in another portion of the complaint, Plaintiff seems to allege that Smucker was away from his post because he was making "rounds" and serving "chow." (*Id*. at pp. 5-6).

"When an inmate fails to allege that he received specific threats and that he communicated those specific threats or fears to prison personnel, the Complaint fails to state an Eighth Amendment claim for failure to protect."  *Mosquera v. Delgado*, 2010 WL 2010973 at *4 (additional citations omitted)(inmate who alleged that he repeatedly told defendants that he feared for his health and safety due to "serious threats and conflict" with gang members did not show objective conditions posing a substantial risk because inmate identified only general conflict and failed to ask prison personnel for protection after notifying them of threat).  In order to prove the objective element of his claim, Plaintiff must do more than allege a generalized concern for his safety and welfare.  Based upon the allegations of the complaint, it is not clear that Plaintiff alerted Defendants even to any type of general threat.  Thus, the facts alleged by Plaintiff fall short of the requisite standard and at most, suggest no more than negligent conduct by the two Defendants.

### b. Subjective Element of Claim

It is even more apparent that Plaintiff's allegations fall short of showing the subjective element of his claim. To prove the subjective element, Plaintiff must show that the Defendants Jones and Smucker were both aware of the substantial risk, and actually disregarded it. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, there is nothing in the allegations to suggest that either Defendant was actually aware of and deliberately disregarded a specific danger faced by Plaintiff, or that either became aware of the attack against Plaintiff at any time prior to its conclusion. Plaintiff's allegations suggest that the violence perpetrated against him for ten minutes resulted either from "staff negligence or shortages [of staff]." In other words, there is nothing in the complaint to suggest that the incident was anything but an isolated event of which Jones and Smucker had no prior knowledge or warning. At most, Plaintiff accuses the Defendants of "staff negligence." A culpable state of mind requires "[o]bduracy or wantonness," not mere inadvertence. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir.1992*); accord Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(holding that official must know of and disregard an excessive risk to inmate health or safety); *see also Scott v. Odmark*, 107 F.3d 871, 1997 WL 76213 (6th Cir. 1997)(table, text available in Westlaw, affirming dismissal of failure to prove claim where, despite knowledge that cellmates fought when first placed together, it was reasonable for Defendant to assume that inmates could co-habitate when they

were able to sustain civility toward each other for a period of five days); *O'Connell v. Williams*, 241 Fed. Appx. 55, 58 (3rd Cir. 2007)(an inmate cannot establish subjective awareness of serious risk simply by asserting that staff were informed that inmate was not getting along with other inmates).

To the extent that Plaintiff seeks to hold Defendants liable not for the failure to appreciate the risk of attack, but for their failure to respond quickly enough once the incident began, the allegations in the complaint still fall short of a deliberate indifference claim. Plaintiff does not allege that the Defendants became aware of the fight between him and his fellow inmates as it was occurring but deliberately chose not to intervene. Instead, he alleges only that Defendant Smucker was not present at the precise time that the incident occurred, and that the attention of Defendant Jones was diverted by his alleged focus on his cell phone. Plaintiff allegedly summoned Defendant Jones on the intercom immediately after the incident and alerted him to the fact that Plaintiff had "been jumped" and was in need of medical attention. Any delay between the time that Plaintiff's call for help was received and the Defendants' response lasted no more than a few minutes, at the most. Defendant Jones's alleged statement – that he could not immediately leave his post since he was the only officer present – does not suggest any type of recklessness or deliberate intent to ignore Plaintiff's serious medical needs. Consistent with the implicit intention of Defendant Jones, Plaintiff admits he received medical attention within approximately 10 minutes of the outset of the fight, that 911 was called very soon after his conversation with Defendant Jones, and that he was transported to University Hospital for emergency treatment.

In sum, Defendants argue persuasively that, at most, the allegations against them in the complaint fail to demonstrate a subjective element that goes beyond mere negligence.  *See Brittain v. Clemons*, 2011 WL 2471587 (W.D. Ky., June 21, 2011)(defendant entitled to summary judgment for based on failure to show subjective intent to cause harm, even assuming that defendant intentionally delayed for a few minutes prior to radioing for assistance to break up active prison fight); *contrast Amick v. Ohio Dept. of Rehabilitation & Correction*, 521 Fed. Appx. 354, 363 (6th Cir. March 27, 2013)(where estate alleged that defendants heard prisoner's cry for help but ignored it for thirty minutes while he was choked to death by cellmate, alleged delay in response was sufficient to state a plausible claim of deliberate indifference).

**2. Qualified Immunity**

Although Plaintiff does not specify in his complaint the capacity in which each Defendant has been sued, it appears that Defendants Smucker and Jones have been sued in their individual capacities.  As government officials engaged in the performance of discretionary functions, both Defendants are entitled to qualified immunity absent allegations that their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  As discussed above, even liberally construed the allegations against each of the referenced two Defendants reflect – at most, no more than the negligent performance of their duties.  Such allegations clearly fall short of the objective and subjective components required to demonstrate a claim of deliberate indifference to serious medical needs.  *See also Davidson v. Cannon,* 474 U.S. 344, 348 (1986)("the

protections of the Due Process Clause…are just not triggered by lack of due care by prison officials.").

In his response, Plaintiff asserts that qualified immunity does not apply because "Jones and Smucker far exceeded their discretionary functions."  However, the allegations of the complaint offer no hint of conduct that exceeded Defendants' discretionary functions, nor does Plaintiff's response offer any support for his conclusory argument.

### III.  Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. The motion of Defendants Jones and Smucker for judgment on the pleadings pursuant to Rule 12(c) on all claims brought against them (Doc. 22) should be GRANTED;

2.  All claims against Defendants Jones and Smucker should be dismissed; leaving only Plaintiff's claim(s) against Defendant Sheriff Neil.

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONATHAN SEXTON,                                                  Case No. 1:14-cv-26

       Plaintiff,                                                       Dlott, J.
                                                                        Bowman, M.J.
   v.

INSTITUTIONAL INSPECTOR MAHALMA, et al.,

       Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).